# Illinois Official Reports

## Appellate Court

---

**People v. Brown, 2014 IL App (4th) 120887**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL B. BROWN, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-12-0887 |
| Filed | October 8, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court reversed the first-stage dismissal of defendant's *pro se* postconviction petition alleging that his trial counsel was ineffective in failing to advise him that he would be subject to a life sentence if he was found guilty of the two first degree murder charges filed against him, especially when it was likely he would have rejected his counsel's advice not to ask for an instruction on second degree murder if he had known a life sentence was possible, since defendant presented the gist of a constitutional claim in view of the reasonable probability that defendant could have been convicted of second degree murder if such an instruction had been given; therefore, the cause was remanded for second-stage proceedings, including the appointment of counsel, if requested. |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 08-CF-181; the Hon. Robert L. Freitag, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Michael J. Pelletier, Jacqueline L. Bullard, and Ryan R. Wilson, all of State Appellate Defender's Office, of Springfield, for appellant. |
| | |
| | Jason Chambers, State's Attorney, of Bloomington (Patrick Delfino, David J. Robinson, and Aimee Sipes Johnson, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

| Panel | JUSTICE POPE delivered the judgment of the court, with opinion. Justices Knecht and Turner concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, Michael B. Brown, appeals the trial court's first-stage dismissal of his postconviction petition, arguing the court erred in finding the petition frivolous and patently without merit where he raised the gist of a meritorious claim of ineffective assistance of trial counsel. We reverse and remand for second-stage proceedings.

¶ 2                              I. BACKGROUND

¶ 3    Because the facts are well known by the parties and have been extensively recounted by this court in its prior opinion in this case (*People v. Brown*, 406 Ill. App. 3d 1068, 952 N.E.2d 32 (2011)), we reiterate only those facts necessary to resolve the issues raised on appeal.

¶ 4    This case arises from a February 12, 2008, incident where Calvin and David Walls were shot and killed by defendant following an altercation at defendant's apartment. During the altercation, defendant fired at least 14 shots, which resulted in at least 11 gunshot wounds. Thereafter, the State charged defendant with, *inter alia*, six counts of first degree murder in the deaths of Calvin and David Walls (720 ILCS 5/9-1(a)(1), (a)(2) (West 2008)), and two counts of aggravated battery with a firearm for gunshot wounds to David and Calvin's brother, Levar Walls, and defendant's cousin, Montell Jones (720 ILCS 5/12-4.2(a)(1) (West 2008)). Defendant maintained he shot the Walls brothers in self-defense.

¶ 5    Following defendant's April 2009 jury trial, the following colloquy took place during the jury instruction conference regarding whether the jury would be instructed on second degree murder:

        "THE COURT: Before we conclude then, let me bring up the subject, because I want again the record to be clear, the defense has requested in this case, and the court has ruled it will give instructions regarding self-defense and defense of a dwelling. Defense has not requested any instructions on second degree murder, and I just want to, for the record, I want to clarify, [defense counsel], that you have considered and consulted with your client on the issue of the tendering of second degree instructions and that you have decided, and the defendant has decided, that you do not wish to tender those instructions.

[DEFENSE COUNSEL]: Judge, we have had a full conversation and discussion about the legal ramifications of the decision. I have told [defendant] it is one of the four decisions he has to make as a defendant. He has expressed to me today and on a prior occasion he does not wish the jury to be instructed on second degree.

THE COURT: [Defendant], as your attorney just indicated, sir, you have been charged in the indictment with the offense of first degree murder. There is what is often referred to as a lesser included offense of second degree murder. And at your request based upon the evidence that's been presented in this case, the court would instruct the jury on the offense of second degree murder, that is, that they would have the option of determining whether or not you're guilty of first degree murder and if so then determining whether there was a mitigating factor to reduce it to second degree murder. [Defense counsel] has indicated that you have discussed these issues with your counsel. Is that correct, sir?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Do you feel like you've had enough time to talk to him about that issue?

THE DEFENDANT: Yes, sir.

THE COURT: Do you feel that you understand what that issue is?

THE DEFENDANT: I feel it's too confusing of an issue for the jury.

THE COURT: All right. You do feel that you understand the issue of second degree murder after talking to your counsel?

THE DEFENDANT: Yes.

THE COURT: Now, have you decided *based on the advice he has given you* that you do not want the jury instructed on the issue of second degree murder?

THE DEFENDANT: Yes, sir.

THE COURT: All right. And this is your decision?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have any questions at all at this time about that?

THE DEFENDANT: No sir." (Emphasis added.)

¶ 6 Thereafter, the jury found defendant guilty of two counts of first degree murder of Calvin and David and aggravated battery with a firearm for shooting Levar. Defendant was acquitted of aggravated battery with a firearm with respect to Montell.

¶ 7 The trial court sentenced defendant to natural life in prison for each first-degree-murder conviction, to run concurrently with a 30-year prison term for the aggravated-battery-with-a-firearm conviction.

¶ 8 On direct appeal, defendant argued (1) the trial court erred in submitting the initial-aggressor instruction to the jury mid deliberation, (2) the evidence was insufficient to convict, and (3) he was entitled to a $5-per-day credit against fines imposed. In February 2011, this court affirmed the convictions and remanded to the trial court for modification of the credit against fines. *Brown*, 406 Ill. App. 3d at 1084, 952 N.E.2d at 45. In September 2011, a petition for leave to appeal was denied. *People v. Brown*, No. 112245 (Sept. 28, 2011).

¶ 9 In June 2011, defendant filed a *pro se* postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 to 122-7 (West 2010)). In his petition, defendant alleged

ineffective assistance of counsel for counsel's failure to inform defendant he would be subject to a natural life sentence if found guilty of both counts of first degree murder. Specifically, defendant stated:

> "Here, prior to the jury instruction conference, trial counsel informed the defendant that he could tender an instruction for second degree murder to the jury which would allow the jury to consider whether he committed first degree murder or second degree murder, but it would also give the jury a way to find him guilty of murder. Further, trial counsel advised that because the State withdrew the death penalty and due to the fact that the defendant didn't have a prior conviction for first degree murder[,] he faced concurrent sentences of 20-60 years of imprisonment if he was found guilty of both first degree murder charges because the deaths were simultaneous. However, trial counsel never informed the defendant that a natural life sentence of imprisonment was mandated if he was found guilty of both charges[,] nor that the trial court would be allowed to rely on two sentencing factors that required the imposition of a natural life sentence."

¶ 10     Defendant attached to the petition a letter written to him from his trial counsel dated April 17, 2009, the date of the guilty verdicts, wherein counsel stated, in relevant part:

> "Sentencing will occur after the posttrial motion. First degree murder is punishable by 20 to 60 years in prison at 100% time. Personal discharge of weapon which causes the death carries an additional 25 years at 85% time. For the court to impose natural life, it would have to find a prior conviction for first degree murder[,] which does not exist as these convictions are simultaneous. Further, I do not believe the first degree murder sentences can be imposed consecutively. It would be unrealistic to expect a sentence less than 45 years (minimum on murder and the enhancement for discharge of the firearm[)]. What may be problematic is the aggravated battery conviction can be run consecutive (6 to 30) and probably will as the [S]tate will argue it is mandatory that it does."

¶ 11     According to defendant, had he known he would face natural life in prison, he would not have agreed with counsel's advice during his jury trial to forego the tendering of a second-degree-murder instruction to the jury.

¶ 12     In August 2012, in a written order, the trial court dismissed the petition as frivolous and patently without merit. The court found the decision to forego the second-degree-murder instruction was not objectively deficient based on the court's admonishments and the fact defendant clearly preferred, as a matter of trial strategy, to give the jury only the options of guilty of first degree murder or acquittal of first degree murder on the grounds of self-defense. The court further found, even though counsel may have been incorrect in advising defendant of the maximum penalty he faced if found guilty of first degree murder of both victims, the record reflected at the arraignment the court had fully advised defendant of the potential penalties he faced, including natural life in prison.

¶ 13     Defendant filed a timely notice of appeal and the trial court appointed the office of the State Appellate Defender (OSAD) to represent defendant. Thereafter, OSAD filed a motion to withdraw as counsel under *Pennsylvania v. Finley*, 481 U.S. 551 (1987), asserting no meritorious issues could be raised. On April 2, 2014, we denied OSAD's motion. *People v. Brown*, 2014 IL App (4th) 120887-U.

¶ 14     This appeal followed.

## II. ANALYSIS

On appeal, defendant argues the trial court erred in dismissing his postconviction petition at the first stage of the postconviction proceedings where he sufficiently set forth the gist of an ineffective-assistance-of-counsel claim. We agree.

The Act (725 ILCS 5/122-1 to 122-7 (West 2010)) establishes a three-stage process for adjudicating a postconviction petition. *People v. Beaman*, 229 Ill. 2d 56, 71, 890 N.E.2d 500, 509 (2008). At the first stage, the trial court must review the postconviction petition and determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2010). "[A] *pro se* petition seeking postconviction relief under the Act for a denial of constitutional rights may be summarily dismissed as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 11-12, 912 N.E.2d 1204, 1209 (2009). A petition lacks an arguable basis either in law or in fact where it "is based on an indisputably meritless legal theory" "which is completely contradicted by the record." *Hodges*, 234 Ill. 2d at 16, 912 N.E.2d at 1212.

In the first stage of a postconviction proceeding, the allegations of the petition, liberally construed and taken to be true, need only state "the gist of a constitutional claim." (Internal quotation marks omitted.) *People v. Edwards*, 197 Ill. 2d 239, 244, 757 N.E.2d 442, 445 (2001). The "gist" means the essence, the main point or part (Merriam-Webster's Collegiate Dictionary 493 (10th ed. 2000)), as opposed to a factually complete statement of the claim (*Edwards*, 197 Ill. 2d at 244, 757 N.E.2d at 445). By requiring, in the first stage, only "the gist of a constitutional claim," the supreme court intends to set "a low threshold." (Internal quotation marks omitted.) *Edwards*, 197 Ill. 2d at 244, 757 N.E.2d at 445. As such, only "a limited amount of detail" is required in the petition, and the petition need not make any legal arguments or cite any legal authority. (Internal quotation marks omitted.) *Edwards*, 197 Ill. 2d at 244, 757 N.E.2d at 445.

On appeal, defendant argues the trial court erred in dismissing his postconviction petition at the first stage where he sufficiently set forth the gist of an ineffective-assistance claim. Ineffective-assistance-of-counsel claims are reviewed under the two-pronged standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must prove (1) his attorney's actions constituted errors so serious as to fall below an objective standard of reasonableness; and (2) the deficient performance prejudiced defendant in that, but for the deficient performance, a reasonable probability exists the trial would have resulted in a different outcome. *People v. Evans*, 209 Ill. 2d 194, 219-20, 808 N.E.2d 939, 953 (2004). Defendant must prove both prongs of the *Strickland* test in order to prevail. *Evans*, 209 Ill. 2d at 220, 808 N.E.2d at 954. At the first stage of postconviction proceedings, however, a defendant need establish only it is arguable counsel's performance fell below an objective standard of reasonableness and he arguably was prejudiced as a result. *People v. DuPree*, 397 Ill. App. 3d 719, 737, 922 N.E.2d 503, 518 (2010).

According to defendant, his trial counsel's performance was deficient when counsel incorrectly advised him regarding the potential sentences he faced on the two convictions for first degree murder. Defendant maintains had he known a natural life sentence was mandatory if he was convicted of two murders, he would have asked the jury to be instructed on second degree murder. (Indeed, we note if counsel himself had known natural life was mandatory, he may well have advised defendant to request a second-degree-murder instruction.) Defendant

contends he was prejudiced because it is at least arguable the jury would have convicted him of that crime instead of first degree murder.

¶ 21    It is undisputed defendant was subject to mandatory natural life sentences on the first-degree-murder convictions for having caused the death of more than one person (730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 2008)). The letter from his trial counsel attached to his postconviction petition clearly demonstrates he was advised of the incorrect sentencing range. In addition, the trial court never admonished defendant a natural life sentence was mandatory if he was convicted of two murders. *Brown*, 2014 IL App (4th) 120887-U, ¶ 29. Instead, the court told defendant he " 'could be sentenced to *** natural life' " and " 'could be sentenced' " to 20 to 60 years' imprisonment. *Brown*, 2014 IL App (4th) 120887-U, ¶ 6. Defendant had the right to decide whether to tender a second-degree-murder instruction. *People v. Brocksmith*, 162 Ill. 2d 224, 229, 642 N.E.2d 1230, 1232 (1994). However, defendant was provided with incorrect information regarding the sentence he faced. As such, his ability to make an informed decision regarding the instruction may have been impaired. Thus, we find counsel's performance arguably fell below an objective standard of reasonableness. We note, while the State argues the decision not to request an instruction was strategic and matters of trial strategy are immune from ineffective-assistance claims, we fail to see how a "strategy" based on a fundamental misunderstanding of the law can be considered a true strategy. See *People v. Pugh*, 157 Ill. 2d 1, 19, 623 N.E.2d 255, 263 (1993) (rejecting the State's strategy argument where defense counsel's advice was clearly attributable to a misapprehension of the law).

¶ 22    Having found defense counsel's performance arguably deficient, however, does not end our analysis. An ineffective-assistance claim also requires a showing of prejudice to the defendant from the deficient performance. *Evans*, 209 Ill. 2d at 219-20, 808 N.E.2d at 953. "Prejudice" exists if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v. Manning*, 241 Ill. 2d 319, 326, 948 N.E.2d 542, 546-47 (2011) (citing *Strickland*, 466 U.S. at 694). "[T]he prejudice prong of *Strickland* is not simply an 'outcome-determinative' test but, rather, may be satisfied if defendant can show that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair." *People v. Jackson*, 205 Ill. 2d 247, 259, 793 N.E.2d 1, 9 (2001); *Evans*, 209 Ill. 2d at 220, 808 N.E.2d at 953-54 ("a reasonable probability that the result would have been different is a probability sufficient to undermine confidence in the outcome–or put another way, that counsel's deficient performance rendered the result of the trial unreliable or fundamentally unfair"). Again, for first-stage purposes, a defendant need only establish it is arguable he was prejudiced. *DuPree*, 397 Ill. App. 3d at 737, 922 N.E.2d at 518.

¶ 23    Defendant argues if his counsel had properly advised him regarding his sentence he would have requested a second-degree-murder instruction. Defendant maintains if the jury were so instructed, there exists a reasonable probability it would have found him guilty of second degree murder instead of first degree murder. The State argues the decision not to request the second-degree-murder instruction was trial strategy. While we recognize the decision may have been trial strategy, we also observe counsel's fundamental misunderstanding of the potential penalty may well have caused him to advise defendant not to request the instruction.

¶ 24    Second degree murder is a lesser mitigated offense of first degree murder. *People v. Jeffries*, 164 Ill. 2d 104, 122, 646 N.E.2d 587, 595 (1995). A defendant is guilty of second degree murder if the elements of first degree murder are established but a statutory mitigating

factor also exists. See 720 ILCS 5/9-2(a) (West 2008). Here, the jury could have convicted defendant of second degree murder if he established by a preponderance of the evidence either he was acting under a sudden and intense passion as a result of serious provocation or believed he needed to exercise deadly force to defend himself, even though his belief may have been unreasonable. See 720 ILCS 5/9-2(a), (c), 7-1(a) (West 2008). A defendant is entitled to a second-degree-murder instruction when "slight" evidence which the jury could believe supports it. *People v. Everette*, 141 Ill. 2d 147, 156, 565 N.E.2d 1295, 1298-99 (1990).

¶ 25 Moreover, where, as here, the evidence supported, and the trial court gave, a self-defense instruction, the court must give a second-degree-murder instruction if requested by defendant. In *People v. Washington*, 2012 IL 110283, ¶ 56, 962 N.E.2d 902, the supreme court reaffirmed its prior holding in *People v. Lockett*, 82 Ill. 2d 546, 553, 413 N.E.2d 378, 382 (1980), which in fact *mandates* instructing the jury on second degree murder whenever the evidence supports instructing the jury on justifiable use of force and the defendant requests it.

¶ 26 Here, the trial court determined the evidence supported giving a self-defense instruction. The court also found sufficient evidence supported giving a second-degree-murder instruction if so requested. While conflicting testimony was presented as to what transpired, evidence exists to support defendant's version of events. The presence of that evidence shows defendant's allegations are not completely rebutted by the record. As such, it is arguable a reasonable probability exists the jury, if presented with a second-degree-murder instruction, would have convicted defendant of second degree murder instead of first degree murder.

¶ 27 Thus, it is at least reasonably arguable defendant was prejudiced when the second-degree-murder instruction was not tendered. As a result, we cannot say defendant's postconviction petition failed to present the gist of a constitutional claim. Accordingly, we reverse the trial court's order dismissing defendant's petition and remand for second-stage proceedings, including appointment of counsel if requested by defendant. See 725 ILCS 5/122-2.1(b) (West 2012). We note our findings herein are for the limited purpose of determining whether defendant satisfied the gist standard sufficient to survive a first-stage dismissal.

¶ 28                                            III. CONCLUSION

¶ 29 For the foregoing reasons, we reverse the trial court's first-stage dismissal of defendant's postconviction petition and remand for second-stage proceedings.

¶ 30 Reversed and remanded.